118 T.C. No. 35


UNITED STATES TAX COURT


JEFFREY HAMBARIAN AND VIRGINIA M. HAMBARIAN, ET AL.,[1]
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 11856-99, 7973-00,      Filed June 13, 2002.
            3042-01, 3101-01.


        P is a defendant in a criminal proceeding.  The
transactions and circumstances which gave rise to the
criminal proceeding were also the predicate for R's
civil tax determination.  P's criminal defense attorney
selected 100,000 pages of documents from a much larger
universe of documents that were in the possession of
the prosecuting attorney.  The documents were converted
by P's defense attorney into computer searchable media.
R seeks the production of copies of the documents and
computer searchable media.  P resists turning over the
documents or media on the grounds that his defense

        [1] Cases of the following petitioners are consolidated
herewith:  Jeffrey Hambarian and Virginia M. Hambarian, docket
No. 7973-00, Virginia M. Hambarian, docket No. 3042-01, and
Jeffrey A. Hambarian, docket No. 3101-01.

attorney's selection of the particular documents reflects his mental impressions and is therefore protected work product. The documents sought are otherwise discoverable.

Held: The mere selection of particular documents by P's defense attorney does not automatically transmute the documents into work product. Held, further, as P has failed to make the requisite showing of how the disclosure of the documents selected would reveal the defense attorney's mental impressions of the case, the requested documents and computerized electronic media are not protected by the work product doctrine.

Mark M. Hathaway and James D. McCarthy, Jr., for petitioners.

Louis B. Jack and Nicholas J. Richards, for respondent.

OPINION

GERBER, Judge: Respondent moved to compel the discovery of documents and computer searchable electronic media from petitioners. The documents were obtained by Jeffrey Hambarian's (petitioner's) defense attorneys in a criminal case. Petitioners refused to turn over the documents, asserting the protection of the work product doctrine. In particular, we consider whether the selection of particular documents from a larger universe causes otherwise discoverable documents to become protected work product.

Background

These consolidated cases involve determinations that petitioners' income was understated and that the understatement

was fraudulent.[2]  Concerning the same circumstances that gave rise to respondent's determination, the State of California indicted Mr. Hambarian on the following charges:  Grand theft, presenting false claims, commercial bribery, breach of fiduciary duty, receipt of corporate property, filing false State income tax returns with intent to defraud, and money laundering.  The criminal prosecution has been delayed for approximately 2 years due to a formal conflict of interest inquiry.  The inquiry involves the contention that the Orange County District Attorney's Office should be removed from the case because that office was assisted by an accountant who was employed by the City of Orange, the same entity that Mr. Hambarian allegedly defrauded.

Petitioners contend that respondent is on an overreaching "fishing expedition" in an attempt to bolster an inadequate determination.  Petitioners allege that respondent had based his deficiency determination on newspaper articles and a summary of

---

[2] Petitioners resided in Anaheim Hill, California, at the times their petitions were filed in these consolidated cases. Respondent determined that the fraud penalty applied to both petitioners.  Petitioner Virginia Hambarian has contended that she was not involved in her husband's (Jeffrey Hambarian) criminal matter and that, in any event, she is not authorized to require the turnover of document or materials in the possession of her husband's criminal defense attorney.  This Court has not addressed the merits of Virginia Hambarian's claim that she is not liable for the income tax deficiencies or penalties. Accordingly, we are not able, at this time, to determine whether the documents would be relevant as to her.

checks prepared by the accountant who is central to the conflict of interest dispute. Continuing in that vein, petitioners contend that respondent is attempting to bolster his determination by attempting to discover documents in petitioners' possession.

The documents sought by respondent were initially acquired by the office of the Orange County District Attorney (prosecuting attorney) in connection with the investigation/prosecution of petitioner. We surmise that the documents, in great part, were acquired from Orange County and/or petitioner's business which performed contract services for the county. As part of the pretrial process in the criminal case, the prosecuting attorney selected approximately 10,000 pages of documents from the significantly larger universe of documents acquired and held by the prosecuting attorney. Those documents were selected based upon the prosecuting attorney's judgment that they were relevant and/or discoverable in connection with the criminal proceeding against petitioner. Each page of the selected documents was Bates stamped and turned over to petitioner's defense attorneys, who, in turn, converted the documents into searchable electronic media (PDF format using Adobe Acrobat software). The prosecuting attorney also turned over two discs (CD-ROM) containing images of the front and back of checks which had been scanned into searchable electronic media.

In addition to the documents turned over by the prosecuting attorney, petitioner's defense attorney was permitted to review the evidence log and inspect the entire universe of documents in the possession of the prosecuting attorney. In that regard, the evidence log is approximately 400 pages long. The defense attorney was permitted to access, review, and copy documents from that universe. The documents were stored in boxes, and the prosecuting attorney made a record of the defense attorney's access to particular boxes of documents. The defense attorney selected specific documents and photocopied them using a procedure that would ensure that the prosecuting attorney could not readily determine which specific documents or pages were being copied by the defense attorney. The prosecuting attorney, however, was aware of the overall contents of each box accessed by the defense attorney. The defense attorney copied approximately 100,000 pages of the documents selected under the above-described procedures. The defense attorney converted the documents into searchable electronic media.

Respondent attempted to obtain access to the documents in the possession of the prosecuting attorney. The prosecuting attorney refused to turn over any documents or information without a subpoena. Respondent points out that a Tax Court subpoena is only returnable at the time of trial, so that he was

forced to seek the documents and information by means of discovery.

Respondent's discovery requests seek from petitioners the documents that had been received from the prosecuting attorney, along with copies of the electronic media data bases and/or the CD ROM. Respondent also seeks to obtain the documents selected by petitioner's defense attorney. Petitioners refused to turn over the requested documents.[3] Petitioners contend that some of the documents received from the prosecuting attorney have annotations made by Mr. Hambarian's defense counsel. Petitioners point out that their cost to convert the documents to electronic media was approximately $70,000. Respondent is seeking the electronic data bases and the hard copy of the documents and has offered to pay costs of reproduction.

Discussion

The question we consider here is whether the compilation of documents and/or the creation of electronic data bases are protected under the attorney work product doctrine which originated in Hickman v. Taylor, 329 U.S. 495, 511 (1947). The

---

[3] Petitioners are represented in these consolidated cases by different attorneys from those who represent petitioner, Jeffrey Hambarian in the defense of his criminal indictment. Petitioners raised the point that the requested documents and materials are in the possession of Jeffrey Hambarian's criminal defense attorney and that petitioners and their Tax Court attorneys are not in possession of the requested matter. We fail to understand why that distinction should make any difference in our consideration of the present discovery requests.

work product privilege is intended to protect documents that reveal an attorney's mental impressions and legal theories and that were prepared in contemplation of litigation. Id. at 509-510. The Supreme Court, in holding that certain documents were privileged, explained:

> Proper preparation of a client's case demands that * * * [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways * * *

Id. at 511.

There is no doubt that the documents compiled by the prosecuting and defense attorneys were organized in contemplation of litigation. With respect to the 10,000 Bates numbered pages received from the prosecuting attorney by petitioner's defense attorney, there is no need to protect them, even if they did reflect the prosecuting attorney's mental impressions. Any privilege that may have attached to the 10,000 pages when they were compiled by the prosecuting attorney was abandoned when the documents were turned over or disclosed to petitioner's defense attorney.[4]

---

[4] If petitioner's defense attorney had placed notations on the documents that constitute work product, those notations may be excised to the extent that petitioners can show that such notations are privileged.

Petitioners place heavy reliance on Sporck v. Peil, 759 F.2d 312 (3d Cir. 1985), a case in which the Court of Appeals for the Third Circuit found that a selection and compilation of documents was work product.  Respondent contends that the facts in petitioner's case are distinguishable from Sporck.  The question in Sporck arose in connection with an attorney's preparation for a deposition of his client.  That preparation included the attorney's selection of documents that were placed in a folder for preparing the witness and for transportation to the situs of the deposition.

The deposition documents in Sporck had been selected by the attorney from a larger universe of more than 100,000 documents. The 100,000 document universe had, in turn, been selected by the attorney from a substantially larger universe of documents (several hundred thousand documents) that had been produced in response to discovery.  It was conceded that the contents of the documents did not contain work product.  Further complicating the circumstances in Sporck was the fact that the deponent stated that he had examined documents in preparation for the deposition, and the cross-examining attorney asked that the documents be identified and produced.

The issue in Sporck was described as "whether the selection process of defense counsel in grouping certain documents together out of the thousands produced in this litigation is work

product". <u>Id.</u> at 315. In reaching its decision, the Court of Appeals for the Third Circuit concluded that "Because identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions, * * * [we agree] that identification of the documents as a group must be prevented to protect defense counsel's work product." <u>Id.</u>

The Court in <u>Sporck</u> did not hold that any selection of otherwise discoverable documents by an attorney would convert the documents into work product. The protection of the work product doctrine may be applied only to situations where the attorney's mental impressions would be disclosed by the discovery or handing over of the selected materials. Cases decided since <u>Sporck</u> have emphasized this distinction. Several courts have held that the mere selection and/or organizing of otherwise discoverable documents does not make them into work product. See, e.g., <u>Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.</u>, 164 F.R.D. 250, 252 (D. Kan. 1996); <u>Wash. Bancorporation v. Said</u> 145 F.R.D. 274, 277 (D.D.C. 1992). In that same vein and germane to our facts, an attorney's conversion of paper documents into electronic media, by itself, does not make otherwise discoverable documents into work product. See, e.g., <u>Hines v. Windnall</u>, 183 F.R.D. 596 (N.D. Fla. 1998); <u>Fauteck v. Montgomery Ward & Co.</u>, 91 F.R.D. 393 (N.D. Ill. 1980).

In particular it has been held that for the work product privilege to apply to an attorney's selection of documents, a court should first determine that (1) disclosure of the documents would create a "real, nonspeculative danger of revealing the lawyer's thoughts", and (2) the lawyer had a justifiable expectation that such mental impressions revealed by the materials would remain private. See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1015-1016 (1st Cir. 1988).[5] Similarly, other courts have refined and distinguished the Sporck holding. See, e.g., Resolution Trust Corp. v. Heiserman, 151 F.R.D. 367, 374-375 (D. Colo. 1993); Pepsi-Cola Bottling Co. Pittsburgh, Inc. v. Pepsico, Inc., No. 01-2009-KHV, slip op. at 6 (D. Kan., Nov. 8, 2001).

---

[5] In Sporck v. Peil, 759 F.2d 312, 319 (3d Cir. 1985), this same point was raised, as follows, in a dissenting opinion:

The problem with * * * [the majority's] theory is that it assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected for review by the deponent. There are many reasons for showing a document or selected portions of a document to a witness. The most that can be said from the fact that the witness looked at a document is that someone thought that the document, or some portion of the document, might be useful for the preparation of the witness for his deposition. This is a far cry from the disclosure of the a [sic] lawyer's opinion work product. Even assuming that the documents were selected by the petitioner's attorney, the subject matter is so undifferentiated that its potential for invasion of work product is minuscule at best. [Citations omitted.]

Accordingly, the <u>Sporck</u> holding has been interpreted to require that the attorney's mental impressions would be revealed by the disclosure of the documents selected by an attorney in contemplation of litigation. For instance, the defense attorney in <u>Sporck</u> selected a limited quantity of documents, which fit in a folder. Conceivably, such a discrete selection from a universe consisting of more than 100,000 documents could have disclosed the attorney's mental impression regarding the defense of and preparation for a deposition. In stark contrast, petitioner's defense attorney selected 100,000 pages of documents from a larger universe of documents. Given the huge volume of otherwise discoverable documents, we are constrained from concluding that the mental impressions of petitioner's defense attorney could be gleaned or discerned if the documents were revealed to a third person.

In the case before us, the prosecuting attorney selected 10,000 pages and petitioner's defense attorney selected 100,000 pages from a larger universe of documents maintained by the prosecuting attorney. Given the large volume of documents (pages) involved, there is little or no likelihood that the defense attorney's mental impressions would be discernable.

We are also cognizant that the case before this Court is a civil proceeding and that the parties are urged and required to exchange documents and to stipulate them in preparation for

trial.  See Rule 91, Tax Court Rules of Practice and Procedure;
Branerton Corp. v. Commissioner, 61 T.C. 691 (1974).  To the
extent that the subject documents are the predicate for the
factual development of this case, this Court has always
encouraged that such potential evidence be exchanged.  The
factual basis for the prosecution of petitioner and the merits of
this income tax case involve, to a substantial extent, the same
transactions and events.  It is highly likely that the selection
of the relevant documents by the prosecuting and defense
attorneys resulted in the selection of documents that are germane
and relevant to the merits of the controversy before this Court.

We are far from persuaded, in the circumstances of this
case, that 100,000 pages of materials selected by petitioner's
defense attorney reveal his mental impressions.  In addition, we
are concerned that a finding of protected work product with
respect to the selection of 100,000 pages of otherwise
discoverable materials would permit an excessively pervasive use
of the work product doctrine.  Such use could easily evolve into
abuse accomplished by the mere selection of documents from a
larger universe.  Petitioner has only generally alleged that the
defense attorney's mental impressions would be compromised.
Petitioner has not described with any specificity the reason why
the selection would reveal the mental impressions of the defense
attorney.  This showing could have been made in camera, if its

disclosure would have been damaging to petitioner's defense of his criminal case.  Without some showing or assurance that the mental impressions of petitioner's attorneys would be revealed, the work product doctrine is not applicable under the circumstances of this case.

To reflect the foregoing,

An appropriate order will be issued granting respondent's motion to compel.