**In re VITAMINS ANTITRUST LITIGATION.**

**Misc. No. 99–197(TFH).
MDL No. 1285.**

United States District Court,
District of Columbia.

Oct. 21, 2002.

*MEMORANDUM OPINION*

*Re: Roche–BASF–Rhône Defendants'
Rule 53 Objection*

THOMAS F. HOGAN, Chief Judge.

Pending before the Court is the Rule 53 Objection of defendants F. Hoffman LaRoche Ltd., Roche Vitamins Inc., Hoffman–La Roche Inc., BASF AG, Rhône–Poulenc Animal Nutrition S.A., and Rhône Poulenc S.A. (hereinafter the "Roche–BASF–Rhône Defendants" or "Defendants") to the Special Master's Report recommending that plaintiffs' Motion to Compel Certain Defendants to Produce the Source Materials Underlying their Governmental Submissions and Rule 30(b)(6) Statements be granted in part and denied in part. After carefully considering the Special Master's Report, the defendants' objections ("Objection"), the plaintiffs' response ("Response"), and the entire record herein, the Court will adopt the Special Master's Report and Recommendations.

Specifically, the Court will deny plaintiffs' motion to the extent that it seeks to compel Degussa AG and Lonza AG to produce any work product materials, and to the extent that it seeks to compel the defendants to produce source materials for their submissions to governmental authorities. The Court will grant plaintiffs' motion in part, with respect to the Roche–BASF–Rhône Defendants, and order that these defendants produce for *in camera* review before the Special Master any and all source materials used to prepare their Rule 30(b)(6) witness statements (other than government submissions and any other source materials already produced to plaintiffs) ("Source Materials"), so that the Special Master can make a final recommendation on whether such materials constitute ordinary work product, and if so, upon redaction of any opinion work product, produce such materials to plaintiffs pending further objections.

## I. BACKGROUND

In his August 8, 2002, Report and Recommendation, the Special Master laid out in exhaustive detail the background behind the current Rule 53 Objection, which may be summarized as follows. On March 14, 2001, various plaintiffs served a Memorandum Re: Plaintiffs' Rule 30(b)(6) Deposition Topics on various foreign defendants in this multidistrict proceeding. A similar Memorandum was served on one domestic defendant on March 16, 2001.[1] These Memoranda included deposition topics pertaining to such defendants' knowledge regarding various aspects of the conspiracy. Objections were raised regarding various issues, responses were filed, and counsel for the parties subsequently conferred and reached agreement on most of the deposition topics.[2]

At subsequent depositions between January 10 and March 8, 2002, a number of the Rule 30(b)(6) designees submitted written witness statements ("Witness Statements") in response to the deposition topics on defendants' corporate knowledge regarding the

conspiracy. The Witness Statements were, in most cases, intended to substitute for live testimony, and the 30(b)(6) designees were largely unable to respond to questions regarding the Witness Statements. On February 8, 2002, the plaintiffs served discovery requests regarding the source of the Witness Statements and to obtain the underlying documents. Defendants' all responded that such documents were drafted by their lawyers, and replied variously to other requests; none produced additional documents.

On April 8, 2002, plaintiffs filed the Motion to Compel Source Materials Underlying Defendant's Governmental Submissions and Rule 30(b)(6) Witness Statements, currently at issue before the Court. Plaintiffs sought materials used by the defendants (1) to prepare the defendants' submissions to various governmental authorities investigating alleged conspiratorial conduct in the market for vitamins, and (2) to prepare the Witness Statements intended to serve as the sum total of defendants' corporate knowledge respecting certain Rule 30(b)(6) deposition topics.

These issues were referred to the Special Master, who heard oral argument on June 20, 2002. In a written report dated August 8, 2002, the Special Master concluded that the materials sought were attorney work-product, and that protection of the materials had not been waived with respect to any of the materials. The Special Master further found that, although the question could not be determined conclusively prior to *in camera* review, defendants' own description of the source materials for the Witness Statements demonstrated that the materials were likely fact work product, as they were notes of interviews or debriefings thereafter which reflect an attempt to create an accurate record of questions posed and answers given, and therefore, the notes would be unlikely to reflect the legal theories or impressions of counsel.

The Special Master next found that plaintiffs had not made a sufficient showing to

---

1. *See* Memorandum from Plaintiffs' Coordinating Counsel to Defendants' Coordinating Counsel (March 14, 2001).

2. *See* Memorandum from Plaintiffs' Coordinating Counsel to Defendants' Coordinating Counsel (June 1, 2001).

justify production of work product materials under Rule 26(b)(3) to justify compelling production of the source materials underlying the Witness Statements of defendants Degussa and Lonza, as individuals of both corporations with contemporaneous knowledge of the alleged conspiratorial activity did not assert the Fifth Amendment in response to questions. Plaintiffs had not satisfied their burden of demonstrating such witnesses' faulty or self-serving memories, nor, with respect to Lonza, had they shown other grounds for substantial need for the materials, particularly given unrebutted evidence that plaintiffs' did not make full use of deposition opportunities.

Conversely, while finding that it was a "close question," with respect to the Witness Statements of the Roche–BASF–Rhône Defendants, the Special Master found that the plaintiffs had made a sufficient showing under Rule 26(b)(3) to overcome fact work product protections. This finding was based on evidence that many of the documents related to the conspiracy had been destroyed, on the fact that many of the witnesses whose testimony was recorded in the materials have now asserted their Fifth Amendment rights, depriving plaintiffs of the opportunity to depose them, and most importantly, on the fact that inconsistencies and equivocations in the Witness Statements themselves cannot be answered through deposition of individuals with contemporaneous knowledge of the conspiracy. The Special Master accordingly recommended that the motion be granted with respect only to the materials underlying the Witness Statements of the Roche–BASF–Rhône Defendants. As to the materials underlying the Government Submissions, the plaintiffs failed to present the issue of access to those materials squarely before the Special Master. Accordingly, the Special Master found that the motion should be denied with respect to such materials. Finally, the Special Master recommended that the Roche–BASF–Rhône Defendants be required to produce the Source Materials underlying the Witness Statements for *in camera* review. Should such review reveal that the Source Materials were fact work product from which opinion work product could be redacted, after such redaction, the documents would be produced to plaintiffs.

## II. STANDARD OF REVIEW

Findings of fact in a Special Master's Report are reviewed for clear error, while conclusions of law are reviewed de novo. *See D.M.W. Contracting Co. v. Stolz*, 158 F.2d 405, 406–07 (D.C.Cir.1946); *Hartman v. Duffey*, 973 F.Supp. 199, 200 (D.D.C.1997); *see also* Fed.R.Civ.P. 53. Of course, the trial court makes the final determination of the issues. In this case, both the Special Master's determination regarding whether the Source Materials underlying the Defendants' Witness Statements are fact or opinion work product and the Special Master's Rule 26(b)(3) analysis should be reviewed for clear error, as each involves factual determinations based on evidence properly submitted to the Special Master.

## III. DISCUSSION

Pending before the Court is the Rule 53 Objection of the Roche–BASF–Rhône Defendants to the Special Masters August 8, 2002 Report and Recommendation ("August 8 Report") concerning Plaintiffs motion to compel certain defendants to produce materials used by those defendants (1) to prepare the defendants' submissions to various governmental authorities investigating alleged conspiratorial conduct in the market for vitamins, and (2) to prepare written statements intended to serve as the sum total of defendants' corporate knowledge respecting certain Rule 30(b)(6) deposition topics. As none of the parties contest the August 8 Report finding that all such materials constitute attorney work product subject to protections, and that plaintiffs have failed to make a sufficient showing to overcome such protections with respect to the source materials underlying the governmental submissions and the source materials underlying the 30(b)(6) Witness Statements of defendants Degussa, AG and Lonza, AG, the Court will not address those materials in this opinion, and will adopt the recommendation of the Special Master as to those matters. Instead, the Court will focus solely on the August 8 Report and its recommendation with respect the 30(b)(6) Witness

Statements of the Roche–BASF–Rhône Defendants. The materials sought under such recommendation consist of handwritten notes made by counsel at the time that the Roche–BASF–Rhône Defendants were being interviewed by the United States and Canadian Departments of Justice and any other materials which were later used by the defendants to produce written statements intended to serve as the sum total of defendants' corporate knowledge respecting certain Rule 30(b)(6) deposition topics and to substitute for live testimony on those deposition topics.

### A. Rule 26(b)(3) and the Attorney Work Product Doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure allows for discovery of documents "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The Rule further provides that "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." Fed.R.Civ.P. 26(b)(3).

■ Under the rule, an initial inquiry determines whether the materials in question constitute attorney work product and are therefore protected from discovery. A document satisfies this inquiry on a showing that the document was prepared by an attorney or his or her agent, and the attorney or agent prepared the document in anticipation of litigation. *Id.; see Washington Bancorporation v. Said,* 145 F.R.D. 274, 276 (1992). Neither the Special Master nor the parties found reason to discuss this prong of the inquiry, as the Source Materials in question consist of handwritten notes made by counsel at the time that the Roche–BASF–Rhône Defendants were being interviewed by the United States and Canadian Departments of

Justice, and therefore satisfy the criteria under Rule 26(b)(3).

■ Under the next step of the inquiry, the Court must determine whether the document in question is "opinion" or "fact" work product. That categorization in turn determines the amount of protection afforded to it. *See In re Sealed Case,* 676 F.2d 793, 809–10 (D.C.Cir.1982). Opinion work product contains the "opinions, judgments, and thought processes of counsel" and receives almost absolute protection from discovery. *Id.* Only an "extraordinary justification" for production is sufficient overcome this level of protection. *Id.* By contrast, fact work product contains only non-privileged facts, and must be produced if the party seeking discovery meets the criteria established under the Rule. *Id.* at 809. Rule 26(b)(3) provides that fact work product shall be produced where the requesting party has shown "[1] substantial need of the materials in the preparation of the party's case and [2] that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Even where the party seeking discovery shows "substantial need" and "undue hardship," the court ordering discovery must ensure that redactions protect any opinions also present in the fact-filled document. *Id.*

#### 1. Fact or Opinion Work Product

While the parties do not oppose the fact/opinion determination in the August 8 Report, the Court addresses it due to the tentative nature of the Special Master's determination under this prong, and due to the Rule's admonition that the Court ensure protection of opinion work product absent a showing of "extraordinary justification" for production.

Where the document at question may contain both fact and opinion work product, classification of the document for purposes of the Rule becomes difficult. *See Said,* 145 F.R.D. at 276. The August 8 Report notes this difficulty, as well as the admonition of the Supreme Court that disclosure of "notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." Au-

gust 8 Report at 32 (quoting *Upjohn v. United States,* 449 U.S. 383, 399, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). However, as the Special Master further points out, a distinction may be made between attorney notes of the type obtained in a wide ranging inquiry such as that done in an initial interview, and those obtained in a litigation-related investigation where "facts elicited necessarily reflect[ ] a focus chosen by the lawyer." *Id.* at 33 (quoting *In re Sealed Case,* 124 F.3d 230, 236–37 (D.C.Cir.1997)). The Special Master tentatively found that the Source Materials were more likely the latter, as "the context suggests that the lawyer has not sharply focused or weeded the materials," thus satisfying the test created in *Sealed Case. Id.* at 33 (quoting *Sealed Case,* 124 F.3d at 236).

The Special Master's analysis under the fact/opinion inquiry reveals that he considered the foregoing considerations carefully; indeed, the Special Master termed his decision as "tentative" pending an opportunity to review the Source Materials *in camera. See Id.* at 35. The Special Master reached the conclusion that the Source Materials were largely, if not wholly, fact work product based on the parties' own description of the materials as counsel's attempts to record questions and responses as accurately and completely as possible. *Id.* at 33–34. As the Special Master notes, such a determination cannot be definitively made until the Source Materials are produced for *in camera* review. *See id.* at 35. Therefore, the Court finds no clear error in the Special Master's findings and conclusions on this matter to the extent that such materials will be subject to *in camera* review for a final determination under this prong. On such review, should the Special Master find that the attorney's mental impressions are so thoroughly intertwined with factual information that the entire memoranda should be treated as opinion work product, the Source Materials cannot be produced. Fed.R.Civ.P. 26(b)(3). As will be discussed more completely below, the Special Master's finding that the plaintiffs had shown substantial need and undue hardship sufficient to the overcome fact work product protections was "a close question". The plaintiffs have not argued, nor has the Court considered, whether the materials meet the standard of "extraordinary justification" necessary to overcome opinion work product protections, but given the foregoing, it is unlikely such a showing could be made. However, should the Special Master find that any opinion work product may be redacted from the Source Materials, then the redacted materials should be produced to plaintiffs, pending further objections.

### 2. Substantial Need and Undue Hardship

■ Rule 26(b)(3) provides that such fact work product may be produced where the party seeking discovery has shown "[1] substantial need of the materials in the preparation of the party's case and [2] that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). The Special Master noted three reasons for his conclusion that the plaintiffs made an adequate showing of substantial need with respect to the Source Materials underlying the Witness Statements of the Roche–BASF–Rhône Defendants. First, despite materials already discovered through settling defendants and other sources, the evidence shows that a significant portion of documents created by the alleged conspirators which provide evidence of the conspiracy have been destroyed. August 8 Report at 38. Second, the majority of current and former employees of the Roche–BASF–Rhône Defendants who participated in or had contemporaneous knowledge of the conspiracy have asserted the Fifth Amendment in response to substantive questions regarding the conspiracy. *Id.* at 38–39. Third, and most importantly, the 30(b)(6) Witness Statements themselves contain inconsistencies and equivocations, particularly concerning the inception and scope of the conspiracy. *Id.* at 39–40. While noting that such inconsistencies do not necessarily reflect bad faith on the part of the Defendants, the Special Master found that the plaintiffs should have access to the underlying documents so that they might draw their own conclusions where the Witness Statements contain equivocal terms or otherwise appear interpretive, such as references to "possible" meetings or agreements that

"may" have existed regarding pricing. *Id.* at 40–41.

These elements, reasoned the Special Master, speak both to the plaintiffs' substantial need for the materials, and under the second prong of the inquiry, their inability to obtain substantial equivalents to the materials without undue hardship. *Id.* at 41. The plaintiffs cannot depose witnesses with actual knowledge of the meetings in question and the documentary evidence regarding the conspiracy seems to be thin. *Id.* Therefore, the Special Master found that the plaintiffs had made a sufficient showing under Rule 26(b)(3) to obtain any fact work product Source Materials used by the Roche–BASF–Rhône Defendants. *Id.*

The Defendants' oppose the Special Master's recommendation on the grounds that the foregoing reasons do not constitute a sufficient showing of "substantial need" or "undue burden" to overcome work product protections. Objection at 3–4. Their arguments are largely a reiteration of those included in their response brief and reviewed by the Special Master, and may be summarized as assertions that the plaintiffs have received all of the fact information available in the Source Materials through the 30(b)(6) Witness Statements or through other discovery already completed in this litigation.[3]

However, the Defendants further assert that there can be no "substantial need" for information regarding issues not in dispute. Defendants argue that their liability is not in dispute, and the plaintiffs have numerous sources for such admissions of anti-competitive price fixing, in the 30(b)(6) Witness Statements, the Defendants' pleas, and other discovery responses. *Id.* at 2–3. Defendants insist that plaintiffs cannot overcome such flaws by showing that they need information

to prove the existence of conspiratorial agreements outside the scope of the defendants' admissions, either in terms of time or vitamin products. *Id.* at 4. Plaintiffs respond that the Court has heard and rejected similar arguments that Defendants were not obliged to respond to discovery requests regarding co-conspirators and the substance of meetings where a guilty plea has already been entered, and argue that the Court should again reject such reasoning.[4] They argue that the Source Materials contain information on numerous issues outstanding in the litigation, including the time of the conspiracy, its impact on Plaintiffs and damages suffered, and most importantly, the scope of the conspiracy. Objection at 3–4.

The Special Master's analysis under this prong suggests that he considered the questions of both the plaintiffs substantial need for the source materials and the inability of plaintiffs to obtain a substantial equivalent for the materials without undue burden. As the Special Master notes, it is difficult to determine whether equivocal statements in the Witness Statements reflect verbatim statements by witnesses or the interpretations of counsel preparing such statements on the basis of attorney notes. August 8 Report at 40–41. Further, as the Special Master remarks, such equivocal statements refer to information regarding the inception and scope of the conspiracy, which remain in dispute in the litigation. *Id.* at 39. Finally, as plaintiffs point out, this Court has previously held that plaintiffs are "not required to accept the assurances of opposing counsel as to what has been made available. [They are] entitled to draw [their] own conclusions on examination of the papers." Mem. Op. Re: Merits Discovery at 19. As the Special Mas-

---

**3.** Defendants argue that destruction of documents relating to the conspiracy is irrelevant, as there is no reason to believe that the Source Materials will replace such documents, and that any information provided to the government was included in the 30(b)(6) Witness Statements. Similarly, with regard to the inability to depose witnesses who have taken the Fifth Amendment, they argue that there is "substantial other record evidence" regarding the conduct in question. They further assert that, as the Special Master suggested, any inconsistencies and equivocal statements are not a sign of bad faith but are

instead the norm in such complex litigation regarding events occurring years earlier. Objection at 3–4.

**4.** Response at 3 ("Defendants' argument that this information is superfluous because they have already pled guilty to the underlying charges is without merit. Despite their guilty pleas, defendants have tried to avoid liability from the beginning ..." ( quoting June 20, 2001 Mem. Op. Re: Merits Discovery at 18–19)).

ter suggests, the plaintiffs should be allowed to do so particularly where they cannot depose witnesses to obtain such information. Accordingly, the Court will adopt the Special Master's recommendation and grant plaintiffs Motion to Compel with respect to Source Materials underlying the 30(b)(6) Witness Statements of the Roche–BASF–Rhône Defendants, subject to a final determination that the Source Materials constitute fact work product from which opinion work product may be redacted.

### B. *In Camera* Review

In accord with the tentative nature of the finding that the Source Materials underlying the Defendants' 30(b)(6) Witness Statements are fact work product, and therefore discoverable upon a sufficient showing under Rule 26(b)(3), the Special Master recommended that the parties produce such materials for *in camera* review so that a final fact/opinion determination could be made. August 8 Report at 43. To facilitate review, the Special Master further recommended that the Defendants highlight such portions of the notes which they contend represent opinion work product before producing the Source Materials. *Id.*

The Special Master heard and rejected Defendants' arguments that *in camera* review offers no meaningful protection absent a "spot check" review of the Source Materials to determine whether and to what extent plaintiffs have substantial need of the materials. *Id.* at 41 n. 60. The Court agrees with the Special Master that such a "spot check" review to determine whether all facts in the source materials are reproduced in the Witness Statements is not in order, given the Court's ruling that defendants be compelled to produce the materials, to the extent that they are fact work product materials, so that plaintiffs' may make their own determinations regarding what the Source Materials show.

However, the Court also rejects the plaintiffs' argument that Defendants' failure to argue that the Source Materials constitute opinion work product leads to the conclusion that no *in-camera* review is required. *See* Response at 6–7. For the reasons outlined

in section III.A.1. above, and because the Court agrees with the Special Master's recommendation, the Court finds that such review is necessary to a final determination of whether any opinion work product contained in the Source Materials can be redacted, making the Source Materials producible under Rule 23(b)(6). Accordingly, the Court will adopt the Special Master's recommendation with respect to the nature and extent of the *in camera* review.

### IV. CONCLUSION

For the foregoing reasons, the Court will adopt the Special Master's recommendation to grant Plaintiffs' Motion to Compel Certain Defendants to Produce the Source Materials Underlying their Governmental Submissions and Rule 30(b)(6) Statements solely with respect to the 30(b)(6) Witness Statements of the Roche–BASF–Rhône Defendants, and to the extent that Defendants shall be ordered to produce the Source Materials for *in-camera* review by the Special Master. On such review, should the Special Master find that the Source Materials contain fact work product from which opinion work product may be redacted, upon such redaction the Source Materials will be produced to plaintiffs, pending further objections. The Court will deny the motion in all other respects.