**Carolee Brady HARTMAN, et al., Plaintiffs,**

v.

**Joseph DUFFEY, Defendant.**

**Civil No. 77–2019(JR).**

United States District Court, District of Columbia.

Aug. 4, 1997.

## MEMORANDUM ORDER

ROBERTSON, District Judge.

Before the Court is plaintiffs' motion for final resolution of their first and second petitions for attorneys' fees and expenses. Those fee petitions and the Special Master's reports on them [1] relate to work completed during the liability phase of this case. Now that the Court of Appeals has affirmed the liability findings, *Hartman v. Duffey,* 88 F.3d 1232 (D.C.Cir.1996), and the Supreme Court has denied certiorari, — U.S. —, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997), there is no doubt that plaintiffs are "prevailing parties," within the meaning of the fee statute, for the liability phase of the case.

## DISCUSSION

The standard of review for a Special Master's report is set forth in my Memorandum Opinion filed June 24, 1997. In short, findings of fact are reviewed for clear error, while conclusions of law are reviewed de novo. *Oil, Chemical & Atomic Workers Int'l Union, AFL–CIO v. NLRB,* 547 F.2d 575, 580 (D.C.Cir.1976), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). The burden of demonstrating error falls upon the objecting party. *Id.* After a hearing, the court may adopt the report of the Special Master, modify it, reject it in whole or in part, receive further evidence, or recommit it to the Special Master with instructions. Fed.R.Civ.P. 53(e)(2).

## I. THE SPECIAL MASTER'S RECOMMENDATIONS FOR PLAINTIFFS' FIRST FEE PETITION WILL BE ADOPTED IN PART.

Plaintiffs' first fee petition covers fees and expenses for the period March 1977 through August 1992. The Special Master reviewed every time entry and issued recommended rulings on each of defendant's more than 2,400 objections. 1994 Report at 12–13. In some instances, the Special Master reduced plaintiffs' hours; in others, he did not. *See id.* at 14–61. The "bottom line" recommendation was to reduce the hours of every timekeeper by 5 per cent, apply market rates, and add a 25 per cent enhancement to the awards of Bruce Fredrickson and Susan Brackshaw for the years 1980–1990. *Id.* at 109. The report also recommends reducing claimed costs and expenses by 5 per cent. *Id.*

*The recommendation to reduce the total number of hours claimed by 5 per cent is approved.*

The Special Master found that 95 per cent of the hours sought by plaintiffs' counsel for March 1977 through August 1992 were reasonably spent on this litigation. 1994 Report at 109. Plaintiffs accept this finding. Pls' Mot. for Final Resolution of Pls' Lodestar Attorneys' Fees and Expenses, at 8. Defendant does not, however, and asserts that plaintiffs' fees should instead be reduced by 28 per cent because certain clerical work should have been absorbed as an overhead expense and because work related to unsuccessful arguments made by plaintiffs should not be compensated. Def's Obj. at 4 n. 3.

---

[1]. The Special Master's report relating to the first petition is entitled "Special Master's Report on Motion by Plaintiffs for Interim Attorney Fees" and was filed on February 18, 1994 (the "1994 Report"). The report relating to the second petition is entitled "Special Master's May 15, 1996 Report and Recommendations Regarding Plaintiffs' Second Motion for Interim Attorneys' Fees and Expenses" (the "1996 Report").

■ The Special Master rejected most of defendant's objections to time spent on clerical work, finding that the work was necessary because of the organizational needs of such a large case. *Id.* at 62. As for time spent in the assertion of unsuccessful points, the Special Master found that plaintiffs' counsel would have done almost the same work and made almost the same arguments in any event. *Id.* at 64. Plaintiffs achieved considerable success in the liability phase of this case, and the fee award will not be reduced simply because plaintiffs failed to prevail on every contention raised. See *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Defendant's objections are overruled.

*The historic rates approved by the Special Master will be adopted. Plaintiffs are not entitled to an award of prejudgment interest on fees and expenses.*

■ The Civil Rights Act of 1991 provides for interest on awards of attorneys' fees and expenses in Title VII actions. The retroactivity of that provision was in question when the Special Master rendered his 1994 Report, and he accordingly calculated each attorney's fee on the basis of both historic and current market rates, reasoning that a current market rate could be used instead of a historic rate as a proxy for the interest to which plaintiffs' counsel might be entitled to receive on their historic lodestar fee. *See Murray v. Weinberger,* 741 F.2d 1423, 1433 (D.C.Cir. 1984).

The Supreme Court's decision in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), that certain provisions of the Civil Rights Act of 1991 were not retroactive, was handed down after the issuance of the 1994 Report. Following the *Landgraf* decision, the District of Columbia Circuit held in *Brown v. Secretary of the Army,* 78 F.3d 645 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 607, 136 L.Ed.2d 533 (1996), that the interest recovery provision of the 1991 Act would not permit an award of interest in a case where the litigation on the merits had been completed, and the attorneys' fees incurred, before the 1991 Act's effective date. The *Brown* deci-

sion turned on the principle that a waiver of sovereign immunity must be strictly construed. *Id.* at 647. The Court of Appeals rejected the argument that interest on fees is "collateral" to the parties' substantive rights or is "separable" from the underlying cause of action. See *id.* at 648. The *Brown* decision likened the new interest provision to rules that "attach[ ] new legal consequences to events completed before [their] enactment," see *id.* at 648, and reasoned that to apply the interest provision retroactively would be to "impose upon the United States a liability to which it has not explicitly consented," *id.* at 654.

As I read the *Brown* decision, it compels the conclusion that Congress has not waived sovereign immunity for an award of prejudgment interest on fees and expenses incurred in litigating discriminatory conduct that occurred before the effective date of the 1991 Act, even if those fees and expenses were incurred after the effective date. To hold otherwise would be to impose new liability to which the United States has not consented.

The Supreme Court has rejected the argument that an adjustment may be made to compensate for delay in the face of a "no-interest rule." *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). If the Civil Rights Act of 1991 does not permit an award of prejudgment interest on fees, neither does it permit the use of current market rates as an adjustment or a proxy for prejudgment interest.

*Objections to the Special Master's findings regarding costs and expenses are overruled*

The Special Master reduced the claims of costs and expenses by 5 per cent across the board to "reflect any overlapping work, work on unsuccessful claims, and any excess that might possibly be alleged by Defendant." 1994 Report at 72–73. Neither party objects to the 5 per cent reduction.

Defendant's argument is that plaintiffs are not entitled to recover any expenses except for expert witnesses and the costs listed in 28 U.S.C. § 1920. The case upon which defendant relies for that proposition, however, *West Virginia University Hospitals, Inc. v.*

*Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), is inapposite.

*The Special Master's award of a 25 per cent enhancement is approved,*

■ The Special Master recommended that Bruce Fredrickson and Susan Brackshaw receive 25 per cent fee enhancements for the years 1980–1990:

> [T]hese two attorneys "performed at levels well beyond the standards of attorneys with such limited experience." ... Mr. Fredrickson has been with this case from the beginning and Ms. Brackshaw has been with it for most of its history and all of its success. The continuity of their efforts "promote[d] tremendous efficiency and necessarily reduce[d] the ultimate expenditure of hours[.]" ... The lodestar in this case fails ... to reflect the benefits from the attorneys' experience and intimate knowledge of the litigation.... [They] carried the laboring oar in this complex class action and achieved success that is remarkable for two lawyers who had begun their work on the case early in their careers.

1994 Report at 74–75. The enhancement is justified. *See McKenzie v. Kennickell,* 875 F.2d 330 (D.C.Cir.1989).

## II. THE SPECIAL MASTER'S RECOMMENDATIONS FOR PLAINTIFFS' SECOND FEE PETITION WILL BE ADOPTED IN PART.

Plaintiffs' second fee petition covers the period September 1992 through December 1994. In the 1996 Report, the Special Master recommended specific disallowances of some of the hours for which fees were sought, and a corresponding reduction, about 7 per cent, of expenses.

Defendant's objections to the 1996 Report fill three volumes. The Special Master carefully examined and made recommendations with regard to each one. He recommended sustaining some objections and overruling

others. I have reviewed the rulings of the Special Master and find them reasonable.[2] Defendant's objections are overruled.

■ Plaintiffs object to reductions taken by the Special Master in several categories: (1) time spent on unsuccessful motions; (2) time spent on locating class members; (3) expenses; and (4) charges for telecopy, messenger, and overnight delivery services.

The Special Master reduced some of the time spent on unsuccessful motions for summary judgment but he allowed compensation for most of this time. 1996 Report at 9–10. As for the costs of locating plaintiffs' clients, the Special Master reasoned that "[i]f class members do not have sufficient interest in their claims to keep their attorneys informed about their current addresses, defendant should not be charged for the expense plaintiffs' counsel incurs to find them." 1996 Report at 16. With regard to expenses, the Special Master found that a deduction from overall expenses corresponding to the percentage reduction in fees was fair, reasonable, and easy. *Id.* at 18. Finally, the Special Master found that the costs of telecopy, messenger, and delivery services were not compensable. *Id.* at 16–17. All of these rulings are reasonable and will be approved.

## CONCLUSION

The 1994 Report and 1996 Report of the Special Master are approved as and to the extent set forth above. The parties are directed to meet and confer and if possible to agree on the dollar amount resulting from the rulings get forth in this Memorandum Order.

---

**2.** The defendant objected that certain time charges were "claimant specific." The Special Master denied this objection on the ground that all of the work to which the defendant objected would have to have been done in connection with all of the claims and, thus, was not claimant

specific in the sense that defendant asserted. 1996 Report at 11. The Court adopts the Special Master's findings in this regard, but holds that the plaintiffs will not be entitled to claim these charges again in connection with any fee petitions relating to the *Teamsters* phase.